**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
WAYCROSS DIVISION**

KEVIN JOHNSON,

        Plaintiff,

    v.

LELAND DUDEK, Acting Commissioner of
Social Security,

        Defendant.

CIVIL ACTION NO.: 5:24-cv-21

## O R D E R

Plaintiff contests the decision of Administrative Law Judge Craig Petersen ("the ALJ" or "ALJ Petersen"), in which the ALJ determined that Plaintiff's disability has ended. Plaintiff urges the Court to reverse the ALJ's decision. Doc. 15 at 24. Defendant asserts that the Commissioner's decision should be affirmed. Doc. 17 at 2. For the following reasons, the Court **AFFIRMS** the ALJ's decision. The Court **DIRECTS** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment of dismissal.

## BACKGROUND

Plaintiff was originally found to be disabled on August 29, 2003, with extreme limitations in acquiring and using information and an onset date of April 1, 2003. R. 125.[1] After a review, Plaintiff's disability was found to have ceased on November 12, 2013. Id. Plaintiff appealed, and the Agency found Plaintiff to have a continuing disability as of October 2015. R. 127. Plaintiff received a heart transplant on November 2, 2015. R. 1252. Another continuing

---

[1]    A transcript of the entire proceedings before the Social Security Administration appears at Document Number 13. The transcript includes paginated Record cites. Doc. 13-1. The undersigned refers to the transcript using these same Record cites.

disability review occurred on February 19, 2020, and Plaintiff was deemed to no longer be disabled as of February 1, 2020. R. 10, 69–92. On October 10, 2023, a disability hearing officer upheld the decision after a hearing. R. 165–72. Plaintiff requested a hearing before an ALJ. R. 173. ALJ Petersen held a hearing, at which Plaintiff, who was represented by counsel, appeared and testified. R. 40–64. Jack Patton, a vocational expert ("VE"), also appeared at the hearing. On September 25, 2023, ALJ Petersen denied Plaintiff's claim. R. 10–28. The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. R. 1.

Plaintiff, born on August 8, 1997, was 18 years old on the date of the last Comparison Point Decision ("CPD").[2] He was 22 years old at the time of the cessation of disability and 26 years old at the time of the ALJ's decision. R. 32, 69. Plaintiff has a limited tenth grade education and has no past relevant work. R. 26, 46.

## DISCUSSION

At the outset, it is important to consider the timeline of this case and relevant rules changes. Plaintiff was initially found disabled on August 29, 2003. R. 10. The ALJ identified October 8, 2015, as the CPD. R. 12. On January 18, 2017, the Social Security Administration substantially revised the Regulations governing how the Commissioner considers medical evidence, including medical opinions. See 82 Fed. Reg. 5844 (Jan. 18, 2017); 82 Fed. Reg. 15,132 (Mar. 27, 2017). Those revisions apply to claims filed on or after March 27, 2017, and are, therefore, applicable in this case. Compare 20 C.F.R. § 416.920c (applicable to claims filed on or after on or after March 27, 2017), with 20 C.F.R. § 416.927 (applicable to claims filed before March 27, 2017). The parties expressly accept both that the CPD occurred and the claim

---

[2] The CPD is the most recent favorable medical decision that the claimant was or continued to be disabled. 20 C.F.R. § 416.994(b)(1)(vii).

was initially filed prior to March 27, 2017.  Doc. 15 at 12; Doc. 17 at 9.  I will, therefore, apply the Regulations in place prior to March 27, 2017 (20 C.F.R. § 416.927).

## I.    The ALJ's Findings

Title II of the Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  The Act qualifies the definition of disability as follows:

> An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]

42 U.S.C. § 423(d)(2)(A).  Under the Act, the Commissioner must periodically review a disability benefit recipient's continued entitlement to benefits.  42 U.S.C. § 423(f).  To determine whether a claimant is still disabled, an ALJ follows a seven-step sequential evaluation process.  20 C.F.R. § 416.994(b)(5)(i)–(vii); Klaes v. Comm'r of Soc. Sec., 719 F. App'x 893, 895 (11th Cir. 2017).[3]

The first step is whether the claimant has an impairment or combination of impairments that meets or equals a listed condition.  Id.  If the impairment meets a listed condition, the claimant's disability continues.  Id.  If the impairments do not meet a listing, the next inquiry is whether there has been medical improvement.  Id.  If there has been medical improvement, the

---

[3]    Many cases, including Klaes, refer to 20 C.F.R. § 404.1594's eight-step evaluation.  Klaes v. Comm'r of Soc. Sec., 719 F. App'x 893 (11th Cir. 2017).  Section 1594 requires an initial question of whether the claimant is involved in substantial gainful activity.  20 C.F.R. § 404.1594(f)(1).  While the applicable Regulation here is 20 C.F.R. § 416.994, the sequential evaluation is the exact same outside of that initial step.

next step requires a determination of whether the improvement is related to the claimant's ability to do work.  Id.  If there is improvement not related to the claimant's ability to do work, it must be determined whether an exception to medical improvement applies.  Id.  If medical improvement is related to the claimant's ability to do work or if an exception applies, the next determination is whether the complainant has a "severe impairment."  Id.  If all current impairments do not significantly limit the claimant's ability to do basic work activities, the claimant is no longer disabled.

If the claimant has a severe impairment, the sequential evaluation proceeds to the sixth step to determine if the impairment precludes the claimant from performing past relevant work, i.e., whether the claimant has the residual functional capacity to perform his past relevant work.  Id.  A claimant's residual functional capacity "is an assessment . . . of the claimant's remaining ability to do work despite his impairments."  Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997).  If the claimant is unable to perform his past relevant work, the final step of the evaluation process determines whether he can adjust to other work in the national economy.  Klaes, 719 F. App'x at 895.  If the claimant cannot perform other work, his disability continues.

Here, the ALJ followed this sequential process to determine that Plaintiff had the severe impairment of recurrent arrhythmia.  R. 12.  The ALJ also found that Plaintiff had the following medically determinable impairments: left shoulder regenerative joint disease; right shoulder bursitis; adjustment disorder/depressive disorder; anxiety disorder; borderline intellectual functioning; post-traumatic stress disorder ("PTSD"); and obesity.  Id.  However, at the third step, the ALJ determined that Plaintiff's impairment or combination of impairments have not met the severity of a listed impairment since February 1, 2020.  Id.  The ALJ also found that Plaintiff

experienced medical improvement as of February 1, 2020.  R. 14.  The ALJ determined

Plaintiff's medical improvement is related to his ability to do work.  R. 15.

The ALJ found that Plaintiff has the residual functional capacity ("RFC") to perform

light work.  Plaintiff can push/pull up to 10 pounds occasionally.  Plaintiff can stand and walk up

to six of eight hours and sit up to six of eight hours with normal breaks.  Plaintiff can

occasionally climb stairs and ramps but never climb ladders or scaffolds.  Plaintiff can

occasionally balance, stoop, kneel, crouch, and crawl.  There should be no concentrated exposure

to wetness and vibration.  There should be no exposure to unprotected heights or other hazards.

Plaintiff can frequently handle, finger, and feel.  Plaintiff can perform occasional overhead

reaching.  Plaintiff is limited to simple, routine work and work involving simple, work-related

decisions with few, if any, workplace changes.  Plaintiff can occasionally interact with co-

workers, supervision, and the public.  R. 16.

At the next step, the ALJ determined that Plaintiff is unable to perform any past relevant

work.  The ALJ determined that using the Medical-Vocational Rules as a framework supports a

finding Plaintiff is "not disabled."  R. 26.  The ALJ concluded at the final step that Plaintiff

could perform jobs, such as router, garment sorter, and marker, all of which exist in significant

numbers in the national economy.  R. 27.

## II.    Issues Presented

Plaintiff asserts that the ALJ erred in two ways.  First, Plaintiff argues that the ALJ gave

partial weight to examining psychologist Spurgeon N. Cole but failed to adopt Dr. Cole's

opinion that Plaintiff is limited to following one- to two-step instructions.  Doc. 15 at 7.  Second,

Plaintiff asserts the ALJ found the opinions of Plaintiff's treating physician, Dr. David Arnett,

unpersuasive, but the ALJ failed to provide sufficient reasons for this determination.  Id. at 14.

For these reasons, Plaintiff argues that substantial evidence does not support the ALJ's RFC determination.

**III.    Standard of Review**

It is well established that judicial review of social security cases is limited to questions of whether the Commissioner's factual findings are supported by "substantial evidence" and whether the Commissioner has applied appropriate legal standards. Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991); Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990). A reviewing court does not "decide facts anew, reweigh the evidence or substitute" its judgment for that of the Commissioner. Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005). Even if the evidence preponderates against the Commissioner's factual findings, the court must affirm a decision supported by substantial evidence. Id.

However, substantial evidence must do more than create a suspicion of the existence of the fact to be proved. The evidence relied upon must be relevant evidence which a reasonable mind would find adequate to support a conclusion. Ingram v. Comm'r of Soc. Sec. Admin., 496 F. 3d 1253, 1260 (11th Cir. 2007). The substantial evidence standard requires more than a scintilla but less than a preponderance of evidence. Dyer, 395 F.3d at 1210. In its review, the court must also determine whether the ALJ or Commissioner applied appropriate legal standards. Failure to delineate and apply the appropriate standards mandates the findings be vacated and remanded for clarification. Cornelius, 936 F.2d at 1146.

The deference accorded the Commissioner's findings of fact does not extend to his conclusions of law, which enjoy no presumption of validity. Brown v. Sullivan, 921 F.2d 1233, 1236 (11th Cir. 1991) (holding judicial review of the Commissioner's legal conclusions is not subject to the substantial evidence standard). If the Commissioner fails either to apply correct

legal standards or to provide the reviewing court with the means to determine whether correct legal standards were in fact applied, the court must reverse the decision. Wiggins v. Schweiker, 679 F.2d 1387, 1389 (11th Cir. 1982), overruled by statute on other grounds recognized by Lane v. Astrue, No. 8:11-CV-345-T-27, 2012 WL 292637, at *4 (M.D. Fla. Jan. 12, 2012).

## IV.    Substantial Evidence Supports the ALJ's Consideration of Dr. Cole's Opinion

Plaintiff argues that ALJ Petersen gave partial weight to Dr. Cole's opinions but failed to adopt Dr. Cole's opinion that Plaintiff should be limited to following only one- to two-step instructions. Dr. Cole opined that Plaintiff "can follow rules and remember simple one or two step instructions" but would have difficulty with more complex tasks. Doc. 15 at 10 (quoting R. 1288). Plaintiff argues that the ALJ failed to explain why he did not adopt this limitation. Id. at 12. Plaintiff also argues a limitation to one- to two-step instructions would limit him to General Educational Development reasoning level 1 jobs. However, all the jobs that the ALJ identified in his decision require a reasoning level of 2. Therefore, the error was not harmless. Id. at 13.

The Commissioner argues that the ALJ properly evaluated Dr. Cole's opinion when considering Plaintiff's RFC. Doc. 17 at 8–10. The Commissioner argues that the ALJ considered all relevant evidence and ALJs consider numerous factors when evaluating a doctor's opinion. Id. at 10. The Commissioner states there is no requirement that an ALJ refer to all evidence in his decision. Id. The Commissioner further argues that the ALJ sufficiently evaluated Dr. Cole's opinion "by limiting [Plaintiff] to simple, routine work involving simple work related decisions with few, if any, workplace changes, and occasional interaction with coworkers, supervision, and the public." Id. at 11. In sum, the Commissioner contends the ALJ

"thoroughly reviewed Dr. Cole's opinion" and other relevant evidence and substantial evidence supports the ALJ's RFC determination.  Id. at 13.

At step six of the sequential process, the ALJ evaluates a claimant's RFC and ability to return to past relevant work.  20 C.F.R. § 416.994(b)(5)(vi).  "RFC" is defined in the Regulations as that which an individual is still able to do despite the limitations caused by his impairments.  20 C.F.R. § 404.1545(a).  Courts have described an RFC as "a medical assessment of what the claimant can do in a work setting despite any mental, physical, or environmental limitations caused by the claimant's impairments and related symptoms."  Watkins v. Comm'r of Soc. Sec., 457 F. App'x 868, 870 n.5 (11th Cir. 2012).  Limitations are divided into three categories: (1) exertional limitations that impact the ability to perform the strength demands of a job, i.e., sitting, standing walking, lifting, carrying, pushing or pulling; (2) non-exertional limitations that impact the ability to meet non-strength job demands, i.e., tolerating dust and fumes, appropriately responding to supervision, co-workers, and work pressure, and difficulty performing manipulative or postural functions of jobs; and (3) a combination of exertional and non-exertional limitations.  20 C.F.R. § 404.1569a(b)–(d).  When determining whether a claimant can return to his past relevant work, the ALJ must consider "all the relevant medical and other evidence."  20 C.F.R. § 404.1520(e).

Plaintiff's argument focuses on alleged omissions the ALJ made in his RFC determination.  Specifically, Plaintiff contends the ALJ should have explained why he did not adopt Dr. Cole's opinion that Plaintiff should be limited to following only one- to two-step instructions.

The record demonstrates that the ALJ extensively evaluated Plaintiff's medical history in evaluating his RFC.  The ALJ considered Plaintiff's subjective complaints.  Plaintiff reported

that he was unable to lift, had reduced control of his right side, shaky hands, blackouts, an inability to see well, and an inability to "get hot." R. 17. Plaintiff also reported an ability to walk 30 to 40 feet and lift 40 pounds. Plaintiff described shortness of breath and pain in his neck, arms, and shoulder, as well as difficulty writing. Plaintiff claimed difficulty with memory, tasks, concentration, understanding, instructions, and sleep. Id. The ALJ discussed Plaintiff's hearing testimony as well, explaining that Plaintiff complained of pain in his hands, shoulders, and feet, as well as difficulty with basic tasks. Plaintiff also underwent treatment by a psychiatrist and a cardiologist. Id. The ALJ found Plaintiff's reports to be "not fully supported by the objective evidence here." R. 22.

The ALJ also considered Plaintiff's medical records. The ALJ discussed Plaintiff's treatment by Dr. Arnett and concluded the medical record evidence established Plaintiff's impairments reducing his RFC to light work. Id. at 17–19. The ALJ then discussed Plaintiff's psychological evaluation by Dr. Kristiansson Roth, who determined that Plaintiff had PTSD, a depressive disorder, and borderline intellectual functioning. Plaintiff achieved a full-scale IQ sore of 72, with an adequate attention span. R. 20. The ALJ stated that Plaintiff saw a psychiatrist, Dr. Karuna Reddy, multiple times between 2020 and 2022 and explained the resulting treatment "supports the finding of moderate limitations." R. 22. The ALJ concluded that Plaintiff's medical records "support the residual functional capacity assessment and show the claimant is capable of standing and/or walking at least 6 hours in an 8-hour workday as required by light exertional work." Id.

The ALJ next considered medical opinion evidence. The ALJ gave partial weight to the opinions of Drs. Abraham Oyewo and Naureen Muoneke, non-examining consultants. Both doctors found that Plaintiff can perform light work, and the ALJ found their opinions consistent

with each other.  Dr. Oyewo, however, found that Plaintiff could perform "the full range of light work" without limitation.  R. 23.  Dr. Muoneke added postural and environmental limitations.  Id.  The ALJ found, however, that the record supported further environmental limits, as well as manipulative limits.  Because Dr. Oyewo did not recommend any limits and Dr. Muoneke recommended only postural limits and some environmental limits, the ALJ assigned their findings only partial weight.  Id.

The ALJ also evaluated the opinions of Dr. David Arnett, giving them little weight.  The ALJ discussed various opinions to which he gave no weight due to remoteness in time.  R. 24.  The ALJ also discussed the opinions of Dr. Richard Lawrence (an ophthalmologist), Virginia Brown, RN, and Plaintiff's family members.  R. 25.

The ALJ considered Dr. Cole's opinions.  Dr. Cole evaluated Plaintiff on January 2, 2021, and found that Plaintiff had depression, borderline intellectual functioning, and PTSD.  R. 1272–86.  Dr. Cole opined that Plaintiff had the following limitations: moderate limitation understanding, remembering, or applying information and a mild limitation in interacting with others.  Dr. Cole also found "moderate limitations concentrating, persisting, or maintaining pace and adapting or managing oneself."  R. 24.  State agency consultant Dr. James Mullins, however, previously found the following limitations: moderate limitation in understanding, remembering, or applying information; mild limitation in interacting with others, concentrating, persisting or maintaining pace, and adapting and managing oneself.  Id.

The ALJ gave both doctors' (Cole and Mullins) opinions only partial weight "because they are not fully consistent with each other and their opinion of a mild limitation in interacting with others is not supported by the claimant's mental status exams, treatment with Zoloft, or his reported symptoms."  Id.  The ALJ found "the combined effect of the claimant's impairments,

his reported symptoms, and his exams[]" supported Dr. Cole's finding of moderate limitations in concentrating, persisting, or maintaining pace and adapting or managing oneself.  Id.  The ALJ also concluded that Dr. Cole's opinion that Plaintiff cannot work with the public or in close coordination with others was inconsistent with Plaintiff's "playing basketball, having friends and a girlfriend, having good family relationships, his cooperative presentation at exams, or his activity of shopping in stores like Wal-Mart."  Id.

After considering the record, the ALJ concluded the RFC was "supported by the objective examination findings, the stability or improvement with routine treatment, and the conservative treatment during the period at issue."  R. 25.  The ALJ concluded that the totality of the evidence supported his RFC determination.  The ALJ also concluded that Plaintiff's medically determinable impairments could cause his symptoms but were not as severe as alleged and were not fully supported.  R. 25–26.

Substantial evidence supports the ALJ's determination.  The ALJ fully considered and extensively discussed Plaintiff's medical records and relevant opinion evidence.  The ALJ provided several reasons why he gave Dr. Cole's opinions only partial weight, including that Dr. Cole's opinions were not consistent with each other or other evidence in the record or fully supported.  R. 24.  The ALJ adequately assessed Plaintiff's potential limitations based on each piece of relevant evidence.

At the hearing, the ALJ asked the VE whether someone with Plaintiff's limitations, including work limited to "simple, routine work" that would involve "simple work-related decisions with few, if any workplace changes" could work in the national economy.  R. 61.  The VE responded that such an individual could perform jobs such as router, garment sorter, and marker.  R. 62.  This is reflected in the ALJ's ultimate disability determination.  R. 26–27.

Plaintiff has not shown that the ALJ's failure to adopt Dr. Cole's specific opinion limiting Plaintiff to one- to two-step instructions was an error. The record shows that the ALJ considered all relevant evidence, including Dr. Cole's opinions. See Adams v. Comm'r, Soc. Sec. Admin., 586 F. App'x 531, 533 (11th Cir. 2014) ("[T]here is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision enables the district court to conclude that the ALJ considered the claimant's medical condition as a whole."). The ALJ was not required to address every single piece of evidence or adopt every opinion that Dr. Cole offered. While a medical source's opinion is relevant and must be considered, "the final responsibility for deciding these issues is reserved to the Commissioner." 20 CFR § 404.1527(d)(2).

Here, the ALJ analyzed the objective medical evidence, the opinion evidence, and the evidence produced at the hearing and rendered a decision. While one could credit the evidence differently to justify adding further limitations in the RFC, that is not the province of the Court. The Court's responsibility is to determine if substantial evidence supports the Commissioner's factual findings, and if so found, uphold the Commissioner, even if the evidence preponderates in favor of the claimant. Dyer, 395 F.3d at 1210 (11th Cir. 2005). The ALJ accounted for Plaintiff's limitations based on the record evidence in his RFC determination, and substantial evidence supports the ALJ's RFC determination.

## V.    Substantial Evidence Supports the ALJ's Consideration of Dr. Arnett's Opinion

Plaintiff argues that the ALJ's assessment of Dr. Arnett's opinions was erroneous for several reasons. It is helpful to start with a review of Dr. Arnett's opinions and the ALJ's consideration of those opinions. I then review the parties' positions regarding Dr. Arnett's

opinions.  Finally, I assess whether substantial evidence supports the ALJ's consideration of Dr. Arnett's opinion and the RFC assessment.

### A.    Dr. Arnett's Medical Opinions

Dr. Arnett, Plaintiff's primary care provider, saw Plaintiff on September 8, 2021.  R. 23. At that visit, Dr. Arnett provided the following opinions about Plaintiff's ability to work. R. 1389.  Plaintiff would need to lie down frequently and at unpredictable intervals for at least 30 minutes at a time.  Plaintiff exhibited "heart transplant dizziness with activity, fatigue, and somnolence due to medical therapy."  Id.  Plaintiff could occasionally lift and carry 25 pounds and could frequently lift and carry 10 pounds.  Id.  Plaintiff could walk or stand less than two hours in an eight-hour workday and could sit less than six hours in an eight-hour workday. R. 1390.  Plaintiff's ability to push and pull was limited in his upper extremities.  Id.  Plaintiff could never climb or balance and could occasionally kneel, crouch, crawl, and stoop.  Plaintiff had no limitations in reaching and handling but had limited ability to finger and feel.  Id.  Dr. Arnett then found that Plaintiff could occasionally reach, handle, finger, and feel.  R. 1391.  Dr. Arnett opined that Plaintiff should avoid concentrated exposure to wetness and humidity, should avoid moderate exposure to extreme cold, extreme heat, and gases, and should avoid all exposure to hazards, such as machinery and heights.  Id.

### B.    The ALJ's Consideration of Dr. Arnett's Medical Opinions

The ALJ gave Dr. Arnett's opinions little weight.  The ALJ explained that Dr. Arnett's opinions were largely "not consistent with the medical findings of Drs. Oyewo and Muoneke." R. 23.  The ALJ also found the following.  Dr. Arnett's opinions that Plaintiff could occasionally lift 25 pounds, could frequently lift 10 pounds, and could occasionally stoop, kneel, crouch, and crawl were consistent with the medical findings of State agency consultant, but Dr. Arnett's

opinions that Plaintiff could stand and walk for less than two hours and could sit for less than six

hours were not supported by "his own normal lower extremity exams and documentation of a

normal gait." Id. Dr. Arnett's opinion that Plaintiff could never balance was not supported by

his own treatment records, and the opinion was inconsistent with Plaintiff's occupational therapy

records "that documented no deficits in the claimant's ability to sit or stand." Id. Dr. Arnett's

opinion that Plaintiff could perform limited reaching and handling was not supported by

Plaintiff's reported symptoms or electromyogram. Additionally, the opinion was "not internally

consistent" with Dr. Arnett's later opinion that Plaintiff could only occasionally reach and

handle. Id. Dr. Arnett's opinion that Plaintiff could occasionally finger and feel was

unsupported because there was "no objective documentation of decreased sensation at exams,"

Plaintiff completed forms adequately, Plaintiff reported playing video games, occupational

therapy records "noted normal wrist and finger range of motion bilaterally," and Dr. Arnett's

own opinions cited "presumed sensation." R. 23–24. Finally, Dr. Arnett's opinions that Plaintiff

would be absent from work more than three times a month and would need to lie down

frequently and at unpredictable intervals for at least 30 minutes at a time were not supported. To

inform these findings, Dr. Arnett commented that Plaintiff exhibited dizziness/heart transplant

orthostasis, fatigue, and somnolence "due to medical therapies." R. 1389. In assigning little

weight to this opinion, the ALJ explained that Dr. Arnett "is not a cardiologist and his opinion is

not supported by his own exams that do not objectively document such observations." R. 24.

The ALJ also found that Dr. Arnett's opinion was inconsistent with "[Plaintiff's] Emory

transplant clinic cardiologist progress notes[] and appear[s] to be an over-reliance on the

claimant's subjective complaints/limitations." Id.

###### C.    The Parties' Arguments

Plaintiff makes five challenges related to Dr. Arnett's opinions.  First, Plaintiff argues that the ALJ, in evaluating Dr. Arnett's opinions, "disregarded" Plaintiff's status as a heart transplant recipient.  Doc. 15 at 21–22.  Second, Plaintiff argues that the ALJ "did not acknowledge" relevant medical records evidence from Dr. Arnett.  Id. at 22.  Specifically, Plaintiff argues, the ALJ did not discuss Plaintiff's records showing mild cardiomegaly, an abnormal ECG, myopathy, neuropathy, and limited abduction and range of motion in the shoulders.  Id. at 22–23.  Third, Plaintiff argues that "the ALJ's rejection of Dr. Arnett's opinions because he is not a cardiologist is an insufficient reason to reject his opinion."  Id. at 22.  Fourth, Plaintiff argues that the ALJ did not support his conclusion that Dr. Arnett over-relied on Plaintiff's subjective complaints.  Id. at 22–23.  Finally, Plaintiff contests the ALJ's decision to give Dr. Arnett's opinion little weight because it contradicted the opinions of non-examining Agency record reviewers.  Plaintiff states that "[t]he opinions of the non-examining Agency record reviewers are entitled to little weight when contradictory to the treating physician's opinions and will not constitute substantial evidence standing alone."  Id. at 23.

The Commissioner argues that substantial evidence supports the ALJ's decision to give Dr. Arnett's opinions little weight.  The Commissioner argues that Dr. Arnett's opinions are not consistent with the record, including medical findings of agency consultants.  Doc. 17 at 15.  Further, the Commissioner argues, Dr. Arnett's opinions are unsupported by Dr. Arnett's own examinations, occupational therapy records, and Plaintiff's own reported symptoms and testimony.  Id. at 15–16.  The Commissioner also argues that Dr. Arnett's opinions are not supported due to Dr. Arnett's lack of cardiology specialization and over-reliance on Plaintiff's

subjective complaints.  Id. at 16–17.  The Commissioner argues that even if Plaintiff can show

some evidence to the contrary, substantial evidence still supports the ALJ's conclusions.  Id.

### D.    Analysis

Dr. Arnett is Plaintiff's treating physician.  A treating medical source's opinion is

generally entitled to great weight.  If the treating physician's opinion "is well-supported by

medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with

the other substantial evidence" in the record, the opinion is given "controlling weight."

20 C.F.R. § 416.927(c)(2).  The Commissioner is not required to give a treating medical source's

opinion controlling weight, however, if "good cause is shown to the contrary."  Phillips v.

Barnhart, 357 F.3d 1232, 1240 (11th Cir. 2004).  Good cause exists "when (1) the treating

physician's conclusion is not supported by the evidence, (2) the evidence supported a contrary

finding, or (3) the opinion offered is conclusory or inconsistent with the treating physician's

medical records.  Additionally, the claimant's daily activities can contradict the treating

physician's opinion and lessen its credibility."  Gainous v. Astrue, 402 F. App'x 472, 474–75

(11th Cir. 2010) (citations omitted).  If the ALJ states specific reasons, "failure to give the

treating physician's opinion controlling weight is not reversible error so long as it is supported

by substantial evidence."  Id. at 475.

Substantial evidence supports the ALJ's treatment of Dr. Arnett's opinions.  The ALJ

gave specific reasons for discounting Dr. Arnett's opinions.  The ALJ found that Dr. Arnett's

opinions were unsupported by Plaintiff's reported symptoms and Dr. Arnett's own examination

records. R. 23–24.  The ALJ also found that Dr. Arnett's opinions were inconsistent with

occupational therapy records, transplant clinic cardiologist notes, and with the findings of

Agency non-examining consultants.  Id. at 23.  The ALJ found that Dr. Arnett's opinions were

internally inconsistent.  Id. at 24.  The ALJ found Dr. Arnett's opinions on Plaintiff's cardiac health to be unsupported, at least in part, because he is not a cardiologist.  Id.  The ALJ also found that Dr. Arnett appeared to over-rely on Plaintiff's subjective complaints.  Id.  The ALJ did not broadly reject Dr. Arnett's opinions.  Rather, the ALJ discussed Dr. Arnett's opinions extensively and gave detailed reasons for giving those opinions little weight.

Plaintiff argues that the ALJ failed to acknowledge Dr. Arnett's findings in Plaintiff's medical records.  However, there is "no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision was not a broad rejection that did not enable the court to conclude that the ALJ considered the claimant's medical condition as a whole."  Edgecomb v. Comm'r of Soc. Sec., 841 F. App'x 142, 144 (11th Cir. 2020) (citing Dyer v. Barnhart, 395 F.3d 1206, 1211 (11th Cir. 2005)).  The proposition that the ALJ did not acknowledge every single piece of evidence is not enough, standing alone, to constitute error.  Cf. Dyer, 395 F.3d at 1211 (A court's standard of review in Social Security cases is "whether the ALJ's conclusion as a whole is supported by substantial evidence in the record.").

Plaintiff also argues that the ALJ disregarded Plaintiff's status as a heart transplant recipient.  Plaintiff makes generalized conclusions that heart transplants have "a high early mortality" and that transplants are highly variable depending on the quality of the implant.  Doc. 15 at 21.  Plaintiff does not show that these facts—even if accepted as true—would undermine any particular aspect of the ALJ's decision.  Moreover, Plaintiff's assertion that the ALJ disregarded Plaintiff's cardiac condition is incorrect.  The ALJ stated expressly that Plaintiff "underwent a heart transplant on November 2, 2015."  R. 15.  The ALJ decided that Plaintiff's medically determinable cardiac condition had ceased because Plaintiff's treatment records showed that he "had normal cardiac rate and rhythms at annual transplant clinic follow up

visits." Id.  Plaintiff "denied shortness of breath, chest pain, irregular heart rate, and he reported feeling pretty good overall or reported doing great." Id.  Plaintiff's cardiac follow-up records showed "no evidence of transplant rejection." Id.  Plaintiff also reported "running and playing basketball." Id.  The ALJ concluded that Plaintiff's cardiac condition was no longer medically determinable based on these findings.  Plaintiff might disagree with the ALJ's conclusion, but the ALJ clearly pointed to substantial evidence to support his determination.  Plaintiff's fails to identify any error by the ALJ on this point.

Next, Plaintiff argues that Dr. Arnett's lack of cardiology specialization is not a sufficient reason to reject his opinions.  The Regulations specifically state a medical source's specialization is a factor when considering medical opinions.  20 C.F.R. § 416.927(c)(5).  Plaintiff appears to concede this point, stating "[n]ot being a cardiologist is just one factor to consider when evaluating opinions." Doc. 15 at 22.  In determining how much weight to give Dr. Arnett's opinions, the ALJ properly applied the Regulations' instruction to "generally give more weight to the medical opinion of a specialist about medical issues related to his or her area of specialty than to the medical opinion of a source who is not a specialist." 20 C.F.R. 416.927(c)(5).  Dr. Arnett opined about Plaintiff's cardiac health, explaining that Plaintiff exhibited "dizziness" and "heart transplant orthostasis." R. 1390.  The ALJ, in considering this opinion, considered Dr. Arnett's lack of cardiology specialization, among several other factors.  That is what the Regulations require.  The ALJ did not reject Dr. Arnett's opinion solely because of his lack of specialization.  Instead, the ALJ properly considered Dr. Arnett's lack of specialization, along with all other record evidence, and concluded that the evidence did not support a medically determinable cardiac impairment.

Plaintiff also argues that the ALJ provided no support for his statement that Dr. Arnett over-relied on Plaintiff's subjective complaints. Plaintiff's argument focuses on the following portion of the ALJ's decision:

> [Dr. Arnett] opined the claimant be absent from work more than 3 times per month, would need to lie down frequently at last 30 minutes at unpredictable intervals, and he cites symptoms of dizziness/heart transplant orthostasis, fatigue, somnolence, and medical therapies. However, he is not a cardiologist and his opinion is not supported by his own exams that do not objectively document such observations, and are not supported by the claimant's Emory transplant clinic cardiologist progress notes, and appear to be an over-reliance on the claimant's subjective complaints/limitations

R. 32. The ALJ cited to Dr. Arnett's Medical Source Statement in support. Id. (citing R. 1397–1400).

Here, the ALJ provides minimal explanation for his conclusion that Dr. Arnett over-relied on Plaintiff's subjective complaints/limitations. The ALJ merely points Dr. Arnett's Medical Source Statement. That Medical Source Statement, in turn, is terse. Dr. Arnett provides little, if any, explanation for his opinions concerning these limitations, aside from the fact that Plaintiff had received a heart transplant. Regardless, the ALJ certainly could have provided a better explanation for his conclusion that Dr. Arnett over-relied on Plaintiff's subjective complaints.

Even assuming that the ALJ should have provided a better explanation for the over-reliance concern, Plaintiff has not shown any harm or prejudice from the lack of explanation. The ALJ's observation about over-reliance was just one of several significant reasons that the ALJ gave for assigning little weight to Dr. Arnett's opinion. "[T]he Court is not permitted to reweigh the evidence or substitute its own judgment for that of the ALJ even if it finds the evidence preponderates against the ALJ's decision." Grech v. Kijakazi, Case No. 8:20-cv-1254, 2022 WL 485111, at *2 (M.D. Fla. Feb. 17, 2022) (citing Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983)). Even assuming the ALJ should have provided a better explanation

on this one narrow reason, substantial evidence still supports the ALJ's determination to give Dr. Arnett's opinion little weight.

Finally, Plaintiff argues that the ALJ improperly discounted Dr. Arnett's opinions because they were inconsistent with Agency non-examining records reviewers. The opinions of non-examining agency consultants "when contrary to those of examining physicians, are entitled to little weight, and standing alone do not constitute substantial evidence." Sharfaz v. Bowen, 825 F.2d 278, 280 (11th Cir. 1987). There is no ironclad rule, however, that a treating physician's opinion is always entitled to greater weight. An examining doctor's opinion "is ordinarily entitled to greater weight than that of a non-examining physician, but the administrative law judge is free to reject the opinion of *any* physician when the evidence supports a contrary conclusion." Huntly v. SSA, Comm'r, 683 F. App'x 830, 832 (11th Cir. 2017) (emphasis in original) (citing Sryock v. Heckler, 764 F.2d 834, 835 (11th Cir. 1985)). In addition, even if non-treating sources' opinions conflict with a treating physician's opinion, it is not error to give the non-treating sources' opinions greater weight if the evidence as a whole supports a contrary conclusion to that of the treating physician. See Forrester v. Comm'r of Soc. Sec., 455 F. App'x 899, 902–03 (11th Cir. 2012) (When the evidence supported a contrary opinion to the treating physician's opinion, "the ALJ was not prohibited from reaching that conclusion simply because non-treating physicians also reached it.").

Substantial evidence supports the ALJ's decision to assign greater weight to the non-examining doctors' opinions than to Dr. Arnett's opinion. The ALJ evaluated the non-examining doctors' opinions independently and gave those opinions partial weight. The ALJ then found that Dr. Arnett's opinion was not consistent with the entire record and was not supported by Dr. Arnett's own records. The ALJ provided a detailed explanation of his reasons for not giving Dr.

Arnett's opinions greater weight.  The ALJ's decision to assign little weight to Dr. Arnett's opinion was not solely based on the non-examining doctors' contrary opinions but was based on a multitude of factors.  Substantial evidence, therefore, supports the ALJ's decision.

As noted above, the only role for the Court here is to determine if substantial evidence supports the Commissioner's factual findings and uphold those findings, if so.  Dyer, 395 F.3d at 1210 (11th Cir. 2005).  As such, while Plaintiff may disagree with the ALJ's conclusions, those conclusions are supported by substantial evidence.

## CONCLUSION

Based on the foregoing, the Court **AFFIRMS** the ALJ's decision.  Further, the Court **DIRECTS** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment of dismissal.

**SO ORDERED**, this 26th day of March, 2025.

BENJAMIN W. CHEESBRO
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA